IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AUDEN L. GRUMET and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION FILE NO. |
| vs. | ) ) | 1:13-cv-1019-RLV |
| PROFESSIONAL ACCOUNT MANAGEMENT, LLC and PARK ATLANTA, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS PROFESSIONAL ACCOUNT MANAGEMENT, LLC AND PARK ATLANTA, LLC'S MOTION TO DISMISS PUTATIVE CLASS ACTION COMPLAINT AND BRIEF IN SUPPORT

COME NOW PROFESSIONAL ACCOUNT MANAGEMENT, LLC ("PAM") and PARK ATLANTA, LLC ("PARKAtlanta," and together with PAM, "Defendants"),[1] and respectfully move this Court pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) to dismiss Plaintiff's Complaint. While Defendants will vigorously dispute Plaintiff's factual allegations at the appropriate time, the Plaintiff would not be entitled to relief even if the facts as alleged were true.

---

[1] PARKAtlanta is a trade name of Defendant PAM, not a separate entity, but for consistency with the Complaint, this Motion will use the term "Defendants."

1084860.1

## I.     The FDCPA Does Not Apply Because Grumet's Ticket is not "Debt."

As implied by its name, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., regulates certain types of debt collection. It does not, however, apply to efforts to seek payment of any and all obligations, irrespective of the source of the obligation or identity of the parties. As multiple federal courts and agencies have already held, Plaintiff's parking ticket is not FDCPA-regulated "debt" because it did not arise from a consensual consumer transaction.

### A.     The FDCPA Only Applies to Debts Arising From Consensual Consumer Transactions.

The FDCPA requires a plaintiff to first establish that the obligation to pay that is in dispute is a "debt" as defined by the FDCPA. *Hawthorne v. Mac Adjustment*, 140 F.3d 1367, 1370-71 (11th Cir. 1998). The FDCPA applies only to "debt" that is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to a judgment." [2] 15 U.S.C. § 1692a.

The Eleventh Circuit concluded that the FDCPA thus only applies "when an obligation to pay arises out of a specified 'transaction.'" *Hawthorne*, 140 F.3d at 1371.

---

[2] A plaintiff must also show that a defendant is collecting "debts," in order to establish their potential liability as a "debt collector." 15 U.S.C. § 1692a.

1084860.1

While the FDCPA does not define "transaction," the Eleventh Circuit concluded that "the ordinary meaning of 'transaction' necessarily implies some type of business dealing between parties … [i]n other words, when we speak of 'transactions,' *we refer to consensual or contractual arrangements, not damage obligations thrust upon one*." *Id.* (emphasis added). Building on that analysis, the Eleventh Circuit concluded that "at a minimum, a 'transaction' under the FDCPA must involve some kind of business dealing or other consensual obligation." *Id.* The court then accordingly held that because an alleged obligation to pay "for damages arising out of an [car] accident does not arise out of any consensual or business dealing, plainly it does not constitute a 'transaction' under the FDCPA." *Id.* (upholding judgment on the pleadings for defendant on FDCPA claim). *Hawthorne* also held that the lack of a contract between the plaintiff and either the injured party, its insurer, or the defendant, further confirmed that there was no transaction and "the FDCPA does not apply." *Id.* at 1371, 1372 n.2. *See also* Section I(C) *infra*.

The circuit courts that have ruled on what constitutes a "transaction," and thus a "debt" subject to the FDCPA, have uniformly concluded that a consensual consumer transaction is required, and that an obligation to pay imposed on someone involuntarily is not an FDCPA "debt." *See, e.g., Staub v. Harris*, 626 F.2d 275, 278-79 (3d Cir. 1980) (taxes not debt); *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1167-69

(3d Cir. 1987) (cable theft claim payment not debt);[3] *Mabe v. G.C. Servs. Ltd. P'ship.*, 32 F.3d 86, 88 (4th Cir. 1994) (child support not debt); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997) (dishonored check was debt); *Beggs v. Rossi*, 145 F.3d 511, 512-13 (2d Cir. 1998) (property taxes not debt); *Fleming v. Pickard*, 581 F.3d 922, 925-26 (9th Cir. 2009) (stolen goods not debt); *Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1074-75 (7th Cir. 2011) (municipal fines not debt).

**B.   Plaintiff's Parking Ticket Is Not "Debt" Because It Did Not Arise From a Consensual Consumer Contract/Transaction.**

The question of whether Plaintiff's parking ticket constitutes FDCPA "debt" is not one of first impression within the federal system. District courts have routinely held that parking tickets and traffic citations do not qualify for protection under the FDCPA because they are involuntary obligations to pay, not the product of consensual consumer transactions. In *Gulley*, the Seventh Circuit reviewed federal case law and determined that while no circuit court had yet directly reached the issue of whether a fine constituted a "debt" under the FDCPA, "that issue has come up ***frequently*** in ***the***

---

[3] While *Zimmerman* appears in part based upon a belief that a transaction must involve the extension of credit to qualify under the FDCPA, a view of "transaction" that the Eleventh Circuit rejected, *Zimmerman* nonetheless "may fairly be read to stand for the proposition that a theft does not constitute a 'transaction' as required by the [FDCPA]." *Hawthorne*, 140 F.3d at 1372 n.3.

**district courts**, which **have concluded uniformly that a fine does not stem from a consensual transaction and thus is not a debt under the FDCPA**.” *Gulley*, 664 F.3d at 1075 (collecting cases and holding “**[w]e agree** with these decisions and … conclude that the **municipal fines** … **cannot reasonably be understood as 'debts' arising from consensual consumer transactions** for goods and services. Accordingly, ***the allegations … state no claim under the FDCPA and were properly dismissed*** under Rule 12(b)(6)”) (emphasis added).

In *Graham v. ACS State and Local Solutions, Inc.*, Civ. No. 06-2708 (JNE/JJG), 2006 WL 2911780, at *1-2 (D. Minn. Oct. 10, 2006) (citing, *inter alia*, *Hawthorne*), the court held that the plaintiff, who had received several letters “wherein ACS attempted to collect unpaid parking fines” “assert[ed] no law or facts to establish that the receipt of a fine for a parking violation is a consensual consumer transaction.” Going further, the court explained that it “fails to see how the receipt of a parking ticket, which is a legally imposed fine for parking one's vehicle in an unauthorized location, can constitute a consumer transaction.” *Id.* at *2. The plaintiff thus “failed to establish that the parking tickets fall within the FDCPA. Accordingly, [his] claims must be dismissed.” *Id.*

In *Gibson v. Professional Account Management*, No. 11-12920-BC, 2011 WL 6019958, at *2 (E.D. Mich. Dec. 1, 2011) (citing, *inter alia*, *Bass* and *Graham*), the

district court held that because "[a] parking ticket … does not rest comfortably within this definition of 'consensual transaction,'" the defendant had "a 'meritorious defense' to Plaintiff's FDCPA claim." In *Fox v. California Franchise Tax Board*, Civil Action No. 08-cv-01047-PAB-BNB, 2010 WL 56094, at *3, *8 (D. Colo. Jan. 5, 2010), a magistrate and the district court both held, citing *Bass*, that Plaintiff's FDCPA claim "fails to state a cause of action because the debt at issue is based on a parking fine and therefore is not a 'debt' within the meaning of the [FDCPA]." In *Mills v. City of Springfield*, No. 2:10-CV-04036-NKL, 2010 WL 3526208, at *15-16 (W.D. Mo. Sept. 3, 2010), the court cited *Hawthorne* and *Graham* in holding that tickets from red light cameras did not create FDCPA-protected debts. Instead, the court explained:

> Plaintiffs were not acting as consumers and the imposition of the $100 fines was not consensual. Monetary obligations arising out of red light tickets are analogous to the parking tickets in *Graham*. Because tickets for traffic violations do not constitute obligations arising from consensual or consumer transactions, the $100 fines at issue are not debts under the FDCPA, and that federal statute does not apply here. Again, Plaintiffs fail to state a claim for which relief may be granted.

*Id.* at *16. Just a few months later, the district court in *Reid v. American Traffic Solutions, Inc.*, Nos. 10-cv-204-JPG-DGW, 10-cv-269-JPG, 2010 WL 5289108, at *4-5 (S.D. Ill. Dec. 20, 2010) held that fines for running red lights could not:

> reasonably be viewed as the product of consensual consumer transactions. They are not the product of a negotiation or contract, explicit or implied, where the plaintiffs purchased the right to run red lights in order to

accomplish personal or family purposes. On the contrary, the fines are penalties for violating traffic ordinances that were enacted by municipal legislative bodies. Like parking tickets in *Graham* and traffic fines in *Mills*, they are not debts under the FDCPA.

*Id.* ("transactions under the FDCPA do not include non-consensual obligations such as those resulting from … parking tickets," citing *Bass* and *Graham*).

Numerous other federal district courts addressing similar situations have held that an obligation to pay that arose involuntarily or otherwise outside of a consensual contract was not a "debt" for purposes of the FDCPA.[4]

**C.    Legislative History and Federal Trade Commission Guidance Confirm Defendants' Interpretation.**

**1.    Legislative History of FDCPA Shows Exclusive Focus on Consensual Consumer Transactions.**

---

[4] *See, e.g., Boyd v. J.E. Robert Co.*, No. 05-CV-2455 (KAM)(RER), 2012 WL 4718723, at *11-15 (E.D.N.Y. Oct. 2, 2012) (property taxes and water/sewer charges not debts, citing *Hawthorne* and *Graham*); *Williams v. Allocated Bus. Mgmt., LLC*, No. 10 C 1711, 2010 WL 2330371, at *1-2 (N.D. Ill. June 8, 2010) (car accident claim not debt); *Durso v. Summer Brook Preserve Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1263-65 (M.D. Fla. 2008) (homeowners association fines not debt); *Corridean v. Restore Fin. Servs.*, No. 06-CV-524-HU, 2007 WL 1114221, at *5-7 (D. Or. Apr. 10, 2007) (towing and impoundment charges "***not a consensual consumer transaction, but rather,*** [] ***a consequence of leaving one's vehicle in an unauthorized location***") (emphasis added); *DirecTV v. Cavanaugh*, 321 F. Supp. 2d 825, 836-37 (E.D. Mich. 2003) (TV service piracy claim not debt); *Riebe v. Juergensmeyer & Assocs.*, 979 F. Supp. 1218, 1220-22 (N.D. Ill. 1997) (library fine not debt); *Coretti v. Lefkowitz*, 965 F. Supp. 3, 5 (D. Conn. 1997) (cable piracy claim not debt); *Shorts v. Palmer*, 155 F.R.D. 172, 174-76 (S.D. Ohio 1994) (charges for stolen cigars not debt).

*Hawthorne*, in explaining its conclusion that only consensual consumer dealings could give rise to a "debt" covered by the FDCPA, also noted that "the legislative history and the Federal Trade Commission's ('FTC') staff commentary on the FDCPA confirms [the court's] reading of the statute." *Hawthorne*, 140 F.3d at 1372 n.2. *Hawthorne* first determined that, according to the Senate Report on the FDCPA, the FDCPA only applied to "debts *contracted* by *consumers* for personal, family, or household purposes." *Id.* (citing Consumer Credit Protection Act, S. Rep. No. 95-382 (1977)) (emphasis added by *Hawthorne*). As the obligation to pay arose from a car accident, not a contract or a consumer transaction, it did "not constitute the type of obligation that Congress envisioned protecting through the FDCPA." *Id.*

## 2.    FTC Guidance Confirms Parking Tickets Are Not "Debt."

*Hawthorne* also looked at public statements and guidance from the Federal Trade Commission ("FTC"), the federal agency tasked with "enforcement and administration of the FDCPA." *Id.* As the agency "entrusted with administering the FDCPA" by Congress, the FTC's "interpretation should be accorded considerable weight," although this Court is not bound by it. *Id.* (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)). In 1988, the FTC released a document entitled Statements of General Policy or Interpretation, Staff Commentary On the Fair Debt Collection Practices Act ("FTC Interpretation"), 53

1084860.1

8

Fed. Reg. 50097 (Dec. 13, 1988). In it, the FTC staff explained that the FTC considered "[u]npaid taxes, *fines*, alimony, or tort claims" excluded from the definition of "debt" because "they are not debts incurred from a 'trans[action][5] (involving purchase of) property … or services … for personal, family or household services.'" *Id.* at 50102 (emphasis added). *Hawthorne* thus emphasized in its holding that "the FTC contemplated precisely the type of obligation at issue in this case and expressly found it not to trigger the FDCPA." *Hawthorne*, 140 F.3d at 1372 n.2.

While *Hawthorne* and numerous other federal courts have cited the FTC Interpretation in concluding that various fines, taxes, and other non-consensual penalties are not "debt" for purposes of the FDCPA, FTC staff has subsequently offered even more directly on-point guidance. In 1997, FTC counsel responded to an inquiry about "the debt collection activities of" a private company that collected "unpaid parking fines for various governmental units."[6] The FTC explained that because fines are not "'debts' under Section 803(5) of the FDCPA … *activities collecting unpaid parking fines" are "not … covered by the FDCPA.*" *Id.* (emphasis added).

---

[5] The FTC used the word "transportation" instead of "transaction" which is presumptively a typographical error. *Hawthorne*, 140 F.3d at 1372 n.2.

[6] *See* FDCPA Staff Opinion: LeFevre-Chesworth, Letter from John F. LeFevre, FTC Attorney, to Donald O. Chesworth, Attorney for Law Enforcement Systems, Inc., (Sept. 16, 1997), *available at* http://ftc.gov/os/statutes/fdcpa/letters/chesworth.htm.

**D.** *Hansen* **Does Not Support a Different Result.**

The Complaint claims *Hansen v. Ticket Track, Inc.*, 280 F. Supp. 2d 1196 (W.D. Wash. 2003) holds that a "parking citation is 'debt' as defined by FDCPA." Putative Class Action Complaint for Damages and Injunctive Relief, Dkt. No. 1 ("Complaint"), ¶ 36. *Hansen* does not actually hold that, nor would it overcome the weight of authority cited above even if it did so hold. In *Hansen*, the defendant contracted with private parking lot owners to assist them in collecting "unpaid parking fees, a debt that arises when customers park in the lots and fail to pay the required fee. Customers [were] made aware of their obligation to pay and the possible imposition of extra fees for failure to pay by way of large signs posted at each of the lots." *Hansen*, 280 F. Supp. 2d at 1198. The obligation in *Hansen* thus involves a situation "when a customer fails to pay (or fails to pay enough)," and the defendant then contacts that customer seeking payment on the owner's behalf. *Id. Hansen* is thus distinct from the case at hand and does not contradict the authority limiting the FDCPA to consumer transactions, as the obligation to pay in *Hansen* was incurred in a consensual consumer transaction, i.e., voluntarily parking on a private parking lot giving rise to a debt to the lot owners, not violation of a municipal ordinance.

## II.     The Complaint's FCRA/FACTA[7] Count Fails to State a Claim.

The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, "places distinct

obligations on three types of entities: consumer reporting agencies, users of consumer

reports, and furnishers of information to consumer reporting agencies." *Chipka v. Bank

of Am.*, 355 Fed. Appx. 380, 382 (11th Cir. 2009) (per curiam). The Complaint's FCRA

claim appears to imply a belief that Defendants are liable as furnishers.[8] Such

furnishers' responsibilities are spelled out in § 1681s-2:

> Under subsection (a), persons may not knowingly furnish inaccurate
> information to a consumer reporting agency, must correct any such
> furnished information, and must notify a consumer reporting agency when
> any information is disputed by a consumer. In accordance with subsection
> (b), furnishers of consumer credit information must also verify the
> sufficiency and accuracy of the information when notified by a consumer
> reporting agency of a credit-report dispute.

*Chipka*, 355 Fed. Appx. at 383 (citations omitted).

### A.     There is No Private FCRA § 1681s-2(a) Cause of Action for
###        Reporting False Information to a Consumer Reporting Agency.

While Plaintiff complains that Defendants informed one or more consumer

reporting agencies ("CRAs") that he had not paid his parking ticket, the Complaint

---

[7] While the heading for the Complaint's federal Count II reads "Violations of the Fair
Credit Reporting and Fair & Accurate Credit Transactions Acts," Count II only
contains statutory references to the FCRA, not FACTA. If Plaintiff clarifies or amends
to state a FACTA claim, Defendants will respond at that time.

[8] Defendants do not concede, but merely assume *arguendo* for the purposes of this
Motion, that they are "furnishers" as the term is used by the FCRA.

would still fail to state a claim even if such a statement was made and had been inaccurate,[9] because "there is no private cause of action under the FCRA for furnishing false or inaccurate information to a credit reporting agency." *Smith v. SunTrust Bank*, Civil Action No. 1:11-CV-0898-TWT-CCH, 2011 WL 1527968, at *4 (N.D. Ga. Mar. 24, 2011) ("Plaintiff's claim under the FCRA must be dismissed on that ground"). In what is actually an understatement, Plaintiff admits "***most*** courts that have considered the issue have found that no private right of action exists in favor of consumers directly against furnishers who violate [15 U.S.C.] § 1681s-2(a)(1) by providing inaccurate information to CRAs." Complaint at 23, n.5 (emphasis added). In fact, no Eleventh Circuit district court has held differently, and the Eleventh Circuit itself has repeatedly held that the statute "explicitly bars private suits for violations of [§1681s-2(a)]." *Steed v. EverHome Mortg. Co.*, 308 Fed. Appx. 364, 370 (11th Cir. 2009) (per curiam).[10]

**B.     Plaintiff's Speculative Failure to Investigate § 1681s-2(b)Claim Fails To Satisfy *Twombly* Pleading Requirements.**

Furnishers have a limited duty under the FCRA "to investigate and respond promptly to notices of customer disputes...***only if*** the furnisher received [written]

---

[9] Plaintiff admits that he received a parking ticket, and repeatedly refused to pay it.
[10] *See also Chipka*, 355 Fed. Appx. at 383; *Peart v. Shippie*, 345 Fed. Appx. 384, 386 (11th Cir. 2009) (per curiam); *Green v. RBS Nat'l Bank*, 288 Fed. Appx. 641, 642 (11th Cir. 2008) (per curiam); *Mortensen v. Bank of Am., N.A.*, No. 3:10-CV-13 (CDL), 2011 WL 5593810, at *7 (M.D. Ga. Nov. 17, 2011).

1084860.1

12

notice of the consumer's dispute *from a consumer reporting agency*." *Green*, 288 Fed. Appx. at 642 (discussing §1681s-2(b) claims) (emphasis added). While the Complaint pleads that Plaintiff notified the CRAs he had a dispute, it does not plead facts demonstrating that Defendants either (a) received written notice of such dispute from one or more CRAs or (b) failed to investigate or respond promptly to any such notice. *See* Complaint ¶¶ 57, 59-60. The Complaint thus fails to sufficiently allege the elements of a violation of §1681s-2(b). *Howard v. DirecTV Group, Inc.*, No. CV 109-156, 2012 WL 1850922, at *4-5 (S.D. Ga. May 21, 2012).

The closest Plaintiff comes to actually alleging the initial threshold element of a §1681s-2(b) claim, i.e., that Defendants were notified by one or more CRAs of a dispute, is the pure speculation that "the CRAs presumably found Plaintiff's dispute and notice thereof to be timely and proper and to have merit and worthy of passing along to PAM." Complaint ¶ 59. The Complaint then simply repetitiously alleges, purely on "information and belief," that Defendant failed to investigate and/or correct incorrect information. This "formulaic recitation of the elements" of an FCRA claim "couched as a factual allegation" consisting of nothing more than mere speculation does not state a claim upon which relief may be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also* Section III(A), *supra*. Accordingly, the FCRA

count should be dismissed in its entirety. *Peart*, 345 Fed. Appx. at 386; *Schlueter v. BellSouth Telecomms.*, 770 F. Supp. 2d 1204, 1208 (N.D. Ala. 2010).

## III.   The Complaint's State Law Claims Fail.

### A.   The Complaint Fails To Satisfy Current Pleading Requirements, Particularly The Heightened Requirements of Alleging Fraud.

#### 1.   The Complaint's Conclusory Allegations Fail To Plead Sufficiently Plausible Facts to State a Claim.

A complaint must contain sufficient specific factual matter to "'state a claim to relief that is plausible on its face'" or it must be dismissed pursuant to Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim must include facts that "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "Plausibility" demands more than a "sheer possibility that a defendant has acted unlawfully," and alleged facts that are "merely consistent with" liability "stop[] short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

#### 2.   The RICO and Fraud Counts Are Woefully Unspecific.

Count Four of the Complaint consists of what is, at most, a cursory RICO claim. In its entirety, the single-sentence count reads: "Upon information and belief, Defendants violated O.C.G.A. § 16-14-1 *et seq.* – '*Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act*' – by virtue of the conduct as described herein." Complaint ¶ 74. Count Five – "*Fraud and Misrepresentation*" – is similarly unspecific. Along with snippets from various statutes, the sole factual allegation is "[b]ased on the facts and details as cited herein, Defendants have engaged in fraudulent conduct." *Id.* ¶ 75. These counts fail to satisfy current pleading requirements, particularly the elevated requirements for pleading fraud. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555. Such "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002).

      **a.**    **The RICO and Fraud Allegations Must Be Pled With Heightened Particularity.**

In addition to the "plausibility criteria articulated in *Twombly* and *Iqbal*," Plaintiff's RICO and fraud claims must also comply with the heightened pleading standard for fraud allegations contained in Rule 9(b), which requires: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Thus, Plaintiff must specify:

> (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff[]; and (4) what the defendants gained by the alleged fraud.

*Id.*, citing and quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1380-81 (11th Cir. 1997). Plaintiff must provide that level of detail "with respect to each defendant's participation." *Id.*

### b. Plaintiff Fails To Adequately Plead a Racketeering Pattern, Scienter, Predicate Acts or Even Allege Either Reliance On or Injury From Any Statement.

The lack of any specific factual allegation means Plaintiff cannot show Defendants have plausibly engaged in either a pattern of racketeering or committed otherwise actionable fraud against Plaintiff, requiring dismissal. *Id.* at 1291-93.[11]

---

[11] *See also Dalton v. State Farm Fire & Cas. Co.*, Civil Action No. 1:12-CV-02848-RWS, 2013 WL 1213270, at *3-4 (N.D. Ga. Mar. 22, 2013) (dismissing fraud and

Further, Plaintiff's conclusory allegation of "fraudulent conduct" fails to "allege[] particularized facts supporting an inference of scienter … Thus, Plaintiff has not pled a viable fraud claim under Rule 9(b)." *Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1381-82 (N.D. Ga. 2012).

Plaintiff also does not identify any specific RICO predicate acts, let alone "facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts." *Durso v. Summer Brook Preserve Homeowners Assoc.*, 641 F. Supp. 2d 1256, 1265 (M.D. Fla. 2008). *See also Stroman*, 852 F. Supp. 2d at 1382.

For any such purported predicated act, Plaintiff would have to establish reliance and damage to prove an actual injury, neither of which has even been attempted here. *Durso*, 641 F. Supp. 2d at 1266-67. Plaintiff here has failed to allege any actual injury "in his business or property" caused by any representation by any Defendant, or even that he ever paid any money to any Defendant as a result of any illegal action. Accordingly, his RICO claim must be dismissed. *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169-70 (3d Cir. 1987). In addition to undermining the RICO claim, the Complaint's failure to plead reliance also requires dismissal of the fraud claim. Plaintiff's repeated denials of the parking ticket's validity rebut any possibility of

---

RICO claims); *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1380 (M.D. Ga. 2011) (dismissing fraud claim).

1084860.1

detrimental reliance. *DirecTV, Inc. v. Cavanaugh*, 321 F. Supp. 2d 825, 835-36, 839

(E.D. Mich. 2003) (plaintiff's denial that charges were valid precluded fraud claim as

reliance on statements believed to be false is impossible).

### 3. Plaintiff's "General/Alternative Liability" Count is Not Legally Cognizable.

Count Six of the Complaint, "General/Alternative Liability" simply claims that

Plaintiff is "[a]lternatively and or additionally … entitled to a legal remedy and right of

recovery against Defendants" without any explanation of what right is allegedly at

issue or what contract exists between the parties. *See* Complaint ¶ 76. This must be

dismissed. *See Stroman*, 852 F. Supp. 2d at 1382 (dismissing identical count brought

by this Plaintiff in similar litigation). *Accord Jenkins*, 822 F. Supp. 2d at 1377.

### B. The FCRA Preempts State Law Claims Against Furnishers of Credit Information.

The FCRA contains two separate preemption provisions, § 1681h(e) and §

1681t(b)(1)(F). § 1681h(e) was the only preemption provision in the FCRA prior to

1996, but Congress added § 1681t(b)(1)(F) in 1996. *Howard*, 2012 WL 1850922, at

*5-6. The relevant language from § 1681t(b)(1)(F) provides:

No requirement or prohibition may be imposed under the laws of any State–

(1) with respect to any subject matter regulated under –

…

(F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies …

*Howard*, 2012 WL 1850922, at *6.

Because Plaintiff's state law claims arise from allegations regarding Defendants' "responsibilities as furnishers of information to consumer reporting agencies," they are preempted by § 1681t(b)(1)(F). *Id.* at *7 ("it is clear that § 1681t(b)(1)(F) preempts Plaintiff's state law defamation claim."); *Spencer v. Nat'l. City Mortg.*, 831 F. Supp. 2d 1353, 1365 (N.D. Ga. 2011) (§ 1681t(b)(1)(F) preempts all state law claims based on conduct "regulated under § 1681s-2").[12]

### C.   The Fair Business Practices Act Claim Fails.

The Complaint's Georgia Fair Business Practices Act ("FBPA"), O.C.G.A. § 10-1-390 *et seq.*, count fails to state a claim. First, the FBPA does not apply to parking tickets because they are not consumer transactions. Second, even if the parking ticket was subject to the FBPA, the Complaint fails to allege, let alone plausibly demonstrate, the required elements.

---

[12] *See also Purcell v. Bank of Am.*, 659 F.3d 622, 626 (7th Cir. 2011) (§ 1681t(b)(1)(F) preempts all state statutory and common law claims); *MacPherson v. JPMorgan Chase Bank*, 665 F.3d 45, 47-48 (2d Cir. 2011) (per curiam) (same); *Ross v. FDIC*, 625 F.3d 808, 817 (4th Cir. 2010) (same).

### 1. Parking Tickets Are Not FBPA Consumer Transactions.

The FBPA defines "Consumer acts or practices" as "acts or practices intended to encourage consumer transactions" and, in turn, defines "consumer transactions" as "the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes." O.C.G.A. §§ 10-1-392(a)(7, 10). The FBPA is intended to apply to "only the unregulated consumer marketplace … not regulated areas of activity." *Jenkins*, 822 F. Supp. 2d at 1375. To create FBPA liability, misrepresentations must be in "the medium through which [an] act or practice is introduced into the stream of commerce." *Chancellor v. Gateway Lincoln-Mercury, Inc.*, 233 Ga. App. 38, 44 (1998). *See also Sheppard v. Bank of Am., N.A.*, Civil Action File No. 1:11-CV-4472-TWT, 2012 WL 3779106, at *5 (N.D. Ga. Aug. 29, 2012) ("the alleged offender must have done some volitional act to avail himself of the channels of consumer commerce.") As with the FDCPA, a parking ticket is not a consumer transaction, act or practice, nor advertising or other part of an unregulated marketplace. The FBPA claim should thus be dismissed. *Jenkins,* 822 F. Supp. 2d at 1375-76.

### 2. The Complaint Fails to Allege Reliance or Injury.

Similarly, an FBPA claim must establish: (1) a violation of the Act, (2) causation/reliance, and (3) injury. *Id.* Accordingly, a plaintiff "must demonstrate that

he was injured as the result of the reliance upon the alleged misrepresentation." *Id.* A plaintiff must show that he was "induced to enter into a consumer transaction as a consequence of the defendants' acts or non-disclosure." *Chancellor*, 233 Ga. App. at 44. Here, as with the fraud count, Plaintiff did not show reliance upon any misrepresentation, nor that he incurred any injury as a result of such reliance, so the Complaint's FBPA count must be dismissed.

### D. The Uniform Deceptive Trade Practices Act Claim Fails.

The Complaint also alleges that Defendants violated Georgia's Uniform Deceptive Trade Practices Act ("UDTPA"), O.C.G.A. § 10-1-370 *et seq.*, in some unspecified fashion(s). Plaintiff first fails to specify either exactly what act of Defendants he is claiming is a deceptive trade practice or how Plaintiff relied on it to his injury, meriting dismissal. *Hines v. MidFirst Bank*, Civil Action No. 1:12-CV-2527-TWT-JSA, 2013 WL 609401, at *6-7 (N.D. Ga. Jan. 8, 2013).

Second, Plaintiff does not allege potential future harm to be addressed by injunctive relief, the sole remedy available to a private litigant under the UDTPA. *Willingham v. Global Payments, Inc.*, No. 1:12-CV-001157-RWS, 2013 WL 440702, at *16 (N.D. Ga. Feb. 5, 2013). To receive an injunction, a plaintiff "must show that [he is] 'likely to be damaged in the future by some deceptive trade practice of Defendant[s].'" *Id.* While failure to show reliance upon any statement is alone fatal to

1084860.1

21

this claim, so too is the inability to do more than "at most, demonstrate only past harm which is not a basis for injunctive relief under the UDTPA." *Id.*[13] Even if Plaintiff had some hypothetical claim about how he might be damaged in the future, "speculation about future harm is insufficient to sustain a UDTPA claim." *Id.* at *17. *See also Cheon v. Infinite Energy, Inc.*, 363 Fed. Appx. 691, 695 (11th Cir. 2010) (per curiam) ("[Plaintiffs] are not entitled to injunctive relief [under the UDTPA] based on a hypothetical future harm.")

### E.     The "Defamation-Slander-Libel" Count Should Be Dismissed.

In addition to being barred by FCRA preemption, Plaintiff's conclusory and baseless allegation that Defendants acted with "malice or willful intent to injure Plaintiff" is insufficient to render his "defamation-slander-libel" claim sufficiently plausible to survive a motion to dismiss. *Stroman*, 852 F. Supp. 2d at 1377-78. *See also* Section III(A). Similarly, Plaintiff has not specifically explained what unprivileged and false statements were made by Defendants, or to whom, meriting dismissal. *Jenkins*, 822 F. Supp. 2d at 1379; *Khadija v. Fannie Mae*, Civil Action File No. 1:12-CV-02519-WSD-AJB, 2012 WL 6681736, at *9-10 (N.D. Ga. Nov. 30, 2012). Plaintiff concedes that he both received a parking ticket and refused to pay it.

---

[13] *See also Vie v. Wachovia Bank, N.A.*, Civil Action No. 1:11-CV-3620-RWS, 2012 WL 1156387, at *3 (N.D. Ga. Apr. 6, 2012); *Tri-State Consumer Ins. Co. v. LexisNexis Risk Solutions, Inc.*, 823 F. Supp. 2d 1306, 1326-27 (N.D. Ga. 2011).

1084860.1

While he disputed the ticket's validity, a defamation claim based on nothing more than an implied belief that Defendants told one or more third parties that he received a ticket and refused to pay must fail, as such a hypothetical statement would be both true and privileged. *Id.*; O.C.G.A. §§ 51-5-7(1, 3, 8). Finally, Plaintiff has failed to allege any oral statement by any Defendant to a third party, specifically precluding a slander claim. *Stroman*, 852 F. Supp. 2d at 1377.

## F.     The Intentional Infliction of Emotional Distress Claim Fails.

While anyone might well be unhappy about getting a parking ticket, Defendants' alleged actions fall far short of legally actionable. In Georgia a plaintiff must show all four of the following elements:

> (1) the conduct must be intentional or reckless; (2) the conduct must be extreme or outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress.

*Renton v. Watson*, 319 Ga. App. 896, 903 (2013). Defendants' conduct was not extreme or outrageous, nor did it cause actual severe emotional distress.

### 1.     Defendants' Attempts To Collect Plaintiff's Unpaid Ticket Were Neither Extreme or Outrageous.

Georgia law establishes a particularly high threshold for this element:

> ***Whether a claim rises to the requisite level of outrageousness and egregiousness*** to sustain a claim for intentional infliction of emotional distress ***is a question of law***. Moreover, ***it has not been enough that the***

> **defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress**, **or even** that his conduct has been characterized by **malice**, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as **to go beyond all possible bounds of decency**, and to be regarded as atrocious, and **utterly intolerable in a civilized community**.

*Northside Hosp., Inc. v. Ruotanen*, 246 Ga. App. 433, 435, 541 S.E.2d 66, 69 (2000) (emphasis added). In *Stamps v. Ford Motor Co.*, 650 F. Supp. 390, 401-02 (N.D. Ga. 1986), a creditor called a debtor while he was in the hospital for heart problems to "make arrangements for a 'voluntary surrender'" of the debtor's business. The court held "standard collection techniques cannot ordinarily support a claim, notwithstanding that the plaintiff may have been in a somewhat vulnerable emotional or physical condition," and granted summary judgment on the IIED claim, explaining that while the creditor's actions were "bad form," they were not the "particularly outrageous" conduct that gives rise to a viable claim. *Id.* at 401-02. *See also Garner v. Academy Collection Serv., Inc.*, No. Civ. A.3:04-CV-93-JTC, 2005 WL 643680, at *5-6 (N.D. Ga. Mar. 11, 2005) (citing and quoting *Stamps*).[14]

---

[14] *See also Lawal v. RTM*, 260 Fed. Appx. 149, 153 (11th Cir. 2006) (per curiam); *Cordell v. Pacific Indemn. Co.*, Civil Action No. 4:05-CV-167-RLV, 2007 WL 3046486, at *4 (N.D. Ga. Oct. 12, 2007) (suggestions that plaintiffs committed various malfeasance, including arson, insufficient); *Hill v. Mull*, No. 5:04-CV-329 (DF), 2006 WL 3022280, at *12-13 (M.D. Ga. Oct. 23, 2006); *Renton*, 319 Ga. App. at 903 ("application for an arrest warrant containing false allegations" did not suffice); *Jones*

1084860.1

Even if Plaintiff's allegations that his ticket was issued in error and Defendants were overly aggressive in attempting to get him to pay are correct, the plaintiffs in *Stamps, Garner, Cordell*, *Hill*, and *Renton* were accused of committing more serious offenses and otherwise treated more harshly, and the conduct in *Jones* and *Lawal* was more outrageous than anything done by Defendants.

### 2. Plaintiff Did Not Suffer Severe Emotional Distress Caused By Defendants' Actions.

Plaintiff did not allege that the emotional distress he purportedly suffered as a result of Defendants' "actions and or inactions" was severe. Complaint ¶ 73. Even if he had, Georgia law does not permit an IIED claim to proceed absent evidence "the distress inflicted is so severe that no reasonable person could be expected to endure it." *Jones v. Warner*, 301 Ga. App. 39, 43 (2009).[15]

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed in its entirety for failure to state a claim upon which relief may be granted.

---

*v. Fayette Family Dental Care, Inc.*, 312 Ga. App. 230, 231 (2011) (*physical precedent only*) (masturbation in front of female employee did not suffice).

[15] "Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea[,] [i]t is only where it is *extreme* that liability arises." *Abdul-Malik v. AirTran Airways*, 297 Ga. App. 852, 858, 678 S.E.2d 555 (2009).

1084860.1

Respectfully submitted, this 22nd day of May, 2013:

/s/ Robert L. Ashe III

Emmet J. Bondurant
Georgia Bar No. 066900
Bondurant@bmelaw.com
Robert L. Ashe III
Georgia Bar No. 208077
Ashe@bmelaw.com

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street NW
Atlanta, GA 30309
Telephone: (404) 881-4100
Facsimile: (404) 881.4111

*Attorneys for Defendants*
*Professional Account*
*Management, LLC and*
*ParkAtlanta, LLC*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), counsel for Defendants certifies that the text of the foregoing Motion to Dismiss was prepared using Times New Roman, 14 point font in compliance with Local Rule 5.1(b)

This 22nd day of May, 2013.

/s/ Robert L. Ashe III
Robert L. Ashe III
Georgia Bar No. 208077
ashe@bmelaw.com

1084860.1

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing DEFENDANTS PROFESSIONAL ACCOUNT MANAGEMENT, LLC'S MOTION TO DISMISS PUTATIVE CLASS ACTION COMPLAINT AND BRIEF IN SUPPORT with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

> Auden L. Grumet, Esq.
> The Law Office of Auden L. Grumet, LLC
> 4503 West Sudbury Court
> Atlanta, GA 30360

This 22nd day of May, 2013.

/s/ Robert L. Ashe III
Robert L. Ashe III

1084860.1

28