IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AUDEN L. GRUMET, *and all others similarly situated*, | |
| Plaintiff, | CIVIL ACTION FILE NO. |
| v. | 1:13-cv-01019-RLV-GGB |
| PROFESSIONAL ACCOUNT MANAGEMENT, LLC, and PARK ATLANTA, LLC, | |
| Defendants. | |

## NON-FINAL REPORT AND RECOMMENDATION

This action is before the Court on the motion to dismiss filed by defendants Professional Account Management, LLC ("PAM") and Park Atlanta, LLC ("Park Atlanta") (collectively, "Defendants").[1] (Doc. 9). Defendants move the Court to dismiss Plaintiff's putative class action complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim that would entitle Plaintiff

[1] In their motion to dismiss, Defendants state that Park Atlanta is a trade name of Defendant PAM and is not a separate entity. (Doc. 9 at 1 n.1). Nevertheless, because the docket continues to list "Park Atlanta, LLC" as a separate defendant, and the parties have used the term "Defendants" in their submissions, for clarity's sake, the Court will also use the term "Defendants" to refer collectively to the defendants named in this lawsuit.

to the relief that he seeks. The complaint alleges claims under the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, as well as numerous state law claims.

For the reasons stated below, I **RECOMMEND** that Defendants' motion to dismiss (Doc. 9) be **GRANTED IN PART and DENIED IN PART**.

## I. BACKGROUND[2]

On Saturday, October 22, 2011, at around 10:00 p.m., Plaintiff parked his vehicle in a metered parking space in front of a friend's condominium on Peachtree Place in Atlanta, Georgia. Signs posted nearby stated that payment was required to park in that location between 7:00 a.m. and 10:00 p.m., Monday through Saturday. (Doc. 1, Compl., ¶¶ 16-17).

Plaintiff alleges that he did not park his vehicle until at or after 10:00 p.m.; nevertheless, he was issued a City of Atlanta "Notice of Parking Violation."[3] (Id. ¶ 18;

---

[2] Unless otherwise indicated, the facts in this section are taken from Plaintiff's complaint and the parties' filings, and do not constitute findings of fact by the Court.

[3] The relationship between PAM, Park Atlanta, and the City of Atlanta is not spelled out in the documents filed with the court. Nevertheless, it is clear that PAM and/or Park Atlanta were acting on behalf of the City. (See Doc. 1-5 at 1). The precise nature of the relationship does not affect the conclusion of this Non-Final Report and Recommendation.



AO 72A
(Rev.8/82)

Doc. 1-1 at 1 (Ex. A), Parking Violation #301853392 ["Citation"]). The face of the Citation indicates that it was issued at 9:58 p.m. for a parking meter violation of Atlanta Municipal Code Sec. 150-132. The Citation indicates that $25.00 is "Due Now"; and "After 11/05/2011," the amount due would increase to "$50.00." (Doc. 1-1 at 1). The Citation warned, in capital and bold letters, that "FAILURE TO OBEY THIS NOTICE **WITHIN 14 DAYS** WILL RESULT IN ADDITIONAL PENALTIES" and "FAILURE TO OBEY THIS NOTICE MAY ALSO RESULT IN **IMMOBILIZATION** OF VEHICLE." (Id.). The Citation provided several options for payment, including payment to Park Atlanta by check "made payable to 'City of Atlanta.'" (Id.). The Citation stated that, "Appeals must be made within 14 days of violation issuance to the Municipal Court." (Id.).

On November 2, 2011, Plaintiff timely submitted an appeal to Park Atlanta. (Compl. ¶ 27). On November 4th, Plaintiff received a response, via email, from Katrina Ann Wiley with Park Atlanta, acknowledging receipt of his appeal and stating:

> Thank you for contacting PARKatlanta. We have reviewed your claim and find your citation to be valid based on meter payment report shows [sic] there was no time on the meter when this citation was issued.
>
> Your dispute does not end here. If you are not satisfied [sic] our findings, you have the additional option of disputing this

> citation with the Municipal Court of Atlanta. ... The courts will contact you with a court date to hear your case.

(Doc. 1-2 at 1 [Compl., Ex. B]). Attached to the email was a form titled, "Insufficient Claim," which contained payment instructions and additional information about disputing the Citation. (Doc. 1-3 at 1 [Compl., Ex. C]).

On November 7, 2011, Plaintiff followed the dispute procedures outlined by Park Atlanta and submitted an appeal of the issuance of the parking ticket to the Municipal Court of Atlanta. (Doc. 1-4 at 1 [Compl., Ex. D]). On November 8th, Plaintiff also wrote an email to Raines Carter, the Chief Solicitor of the Municipal Court of Atlanta, with a copy to Park Atlanta, expressing Plaintiff's concerns about the validity of the Citation, the validity/legality of the parking meter(s) in question, and various other issues. (Compl. ¶ 30). Plaintiff alleges that over the following weeks and months, he exchanged numerous emails and had numerous telephone conversations with representatives from the Municipal Court of Atlanta's Solicitor's Office. (Id. ¶ 31).

In a letter dated February 8, 2012 addressed to Plaintiff (with the heading "***Collection Notice*** Unpaid Parking Citations"), Defendant PAM, on behalf of the City of Atlanta, notified Plaintiff that the amount due to satisfy his unpaid parking citation was now $50.00 and the Citation would be "subject to further collection efforts which may include listing this account with the national credit bureaus." (Doc. 1-5 at 1



AO 72A
(Rev.8/82)

[Compl., Ex. E]). The letter stated that "[i]n addition, you may be subject to enforcement activity by the City of Atlanta which may include the booting and towing of your vehicle. All collection activity will stop when the account balance(s) have been paid in full." (Id.).

The letter further stated,

> If you dispute the validity of this debt or any portion thereof, you must notify this office, in writing within 30 days of receiving this notice. Otherwise we will assume the debt is valid and will pursue all means available for its collection. Upon receipt of your protest, we will verify the debt and provide you with a copy of such verification.
>
> This is **NOT** an opportunity to appeal this citation with the City of Atlanta as the time frame for that action has expired.

(Id.). At the bottom of the text portion of the letter was the following notice: "This communication is from a debt collection company. This is an attempt to collect a debt and any information obtained will be used strictly for that purpose." (Id.).

On March 12, 2012, in response to PAM's letter dated February 8, 2012, Plaintiff sent a letter to PAM via Certified U.S. Mail, facsimile and electronic mail (with copies to Park Atlanta and the City Solicitor's Office) "VEHEMENTLY disput[ing] the validity of this unlawful and erroneously issued citation/fine!" and disputing "ALL of the alleged charges/fees/fines/penalties or other assessments associated with this



AO 72A
(Rev.8/82)

matter." (Doc. 1-6 [Compl., Ex. F]). Plaintiff wrote that his letter should serve as his "formal notice of a billing error/dispute in accordance with the FDCPA, TILA, FCBA and, if applicable, the FCRA." (Id.; Compl. at 16-17, ¶ 41). The letter further demanded that "pursuant to the FDCPA, you are hereby commanded to obtain legally adequate written verification of the alleged debt and proof thereof [and or a copy of any alleged judgment] and to provide same to me within the period allowed by law. I also demand that you provide me with the name and address of the original purported creditor, if different from the current one(s)." (Doc. 1-6 at 3).

In a letter dated March 20, 2012, PAM mailed Plaintiff its "response to your request for validation of a debt with Professional Account Management LLC." (Doc. 1-8 at 1 [Compl., Ex. H]). Enclosed with the cover letter was what appears to be a one-page computer printout containing information about the Citation, Plaintiff's automobile, the specific parking meter and parking space where the alleged violation occurred, and a status history for correspondence sent and received in connection with PAM's efforts to collect the fine. (Doc. 1-9 at 1 [Compl., Ex. I]). Plaintiff received the letter and enclosure(s) on March 29, 2012. (Compl. ¶ 42).

On or about March 26, 2012, PAM mailed Plaintiff another notice concerning Plaintiff's "unpaid parking citation(s) issued by the City of Atlanta referred to [PAM]

for collections." (Doc. 1-12 at 1 [Compl., Ex. L]). The notice stated that "This matter requires your immediate attention and will not be resolved until payment is received in full. **You can no longer appeal or further adjudicate the unpaid citation(s)** so please make payment today or call ... if you have questions regarding this debt." (Id. [emphasis in original]). The notice warned that failure to take immediate action might result in reporting to national credit bureaus, towing and impoundment of the subject vehicle, and/or booting of the vehicle if there were three or more unpaid citations. (Id.). Like the first notice, the notice dated March 26, 2012 stated that "This communication is from a debt collection company. This is an attempt to collect a debt and any information obtained will be used strictly for that purpose." (Id.).

On or about April 17, 2012, the Municipal Court of Atlanta issued Plaintiff a notice to appear at a hearing concerning his parking citation dispute. The hearing was scheduled to take place on August 15, 2012 at 8:00 a.m. (Doc. 1-10 at 1 [Compl., Ex. J]). Plaintiff has submitted what appears to be a form that he received from the Municipal Court of Atlanta, dated August 15, 2012, indicating that on that date, Plaintiff's parking meter violation was dismissed, there was no amount due, and the case was closed. (Doc. 1-11 at 1 [Compl., Ex. K]).



AO 72A
(Rev.8/82)

On March 28, 2013, Plaintiff commenced this litigation by filing a complaint entitled, "Putative Class Action Complaint for Damages and Injunctive Relief." (Doc. 1, Compl.). The complaint asserts two causes of action under federal law: "Violations of the Fair Debt Collection Practices Act (FDCPA) [15 U.S.C. § 1692 et seq.]" (Count One); and "Violations of the "Fair Credit Reporting and Fair & Accurate Credit Transactions Acts (FCRA - FACTA) [15 U.S.C. § 1681 et seq.]" (Count Two).

Plaintiff's complaint also asserts that following state law claims: "Violations of the Georgia Fair Business and Deceptive Trade Practices Act(s)" (Count One); "Defamation-Slander-Libel" (Count Two); "Intentional Infliction of Emotional Distress" (Count Three); "Civil RICO" (Count Four); "Fraud and Misrepresentation" (Count Five); "General/Alternative Liability" (Count Six); and "Injunctive Relief" (Count Seven). For the wrongful conduct alleged, Plaintiff seeks special/actual, statutory, consequential, general, and punitive/exemplary damages, as well as attorney's fees, litigation costs, expenses, and interest. (Compl. ¶¶ 78-85).

On May 22, 2013, Defendants filed the instant motion to dismiss Plaintiff's complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 9). Plaintiff filed his response in opposition on June 19, 2013, and Defendants were granted an extension and filed their reply on July 22, 2013. Defendants' motion to dismiss has

been fully briefed and is before the Court for adjudication.

## II. LEGAL STANDARD

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint need not contain "detailed factual allegations," but must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (citation omitted).

In Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009), the Supreme Court clarified the pleading standard for civil actions, stating:

> [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.



AO 72A
(Rev.8/82)

Id. at 678, 129 S. Ct. at 1949 (internal quotes and citations omitted).

The Iqbal Court went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss," the Supreme Court then advised that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (other citations omitted). All reasonable inferences are to be made in favor of the plaintiff. Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993).

## III. DISCUSSION

### A. FEDERAL CLAIMS

#### 1. Fair Debt Collection Practices Act (Count One)

In Count One of the Federal Law Claims section of Plaintiff's complaint, Plaintiff alleges that Defendants are debt collectors, as defined in the FDCPA, and that Defendants violated sections 1692e, 1692f, and 1692g of the FDCPA by, *inter alia*,



AO 72A
(Rev.8/82)

making false, deceptive, and/or misleading representations in its correspondence with Plaintiff; by making false representations of the character, amount, or legal status of the alleged debt; by failing to provide Plaintiff with the name of the creditor to whom the alleged debt was owed; by threatening to take actions that they knew could not lawfully be taken (i.e., booting of car and reporting to credit reporting agencies); and by using "unfair or unconscionable means to collect or attempt to collect" the parking fine at issue in this litigation. (Compl. ¶¶ 34-53).

Plaintiff specifically alleges that despite having timely and properly appealed the Citation at issue to the Atlanta Municipal Court, Defendants violated the FDCPA by sending him the notice dated February 8, 2012 stating that there was an unpaid citation still due and owing, the notice "implied that Plaintiff had not timely appealed to the City even though he had," and the notice "referenced an incorrect amount due [neither $25.00 nor $50.00 was accurate]." (Compl. ¶ 40).

Plaintiff alleges that PAM's notice dated March 20, 2012 also erroneously listed an amount due of $50.00 (including a late fee of $25.00) even though an extension had been granted to Plaintiff on November 3, 2011. (Compl. ¶ 42; Docs. 1-8, 1-9 [Compl., Exs. H, I]). Plaintiff denies that he was late in paying anything, since he was still in the

process of pursuing his appeals when the February 8th and March 20th notices were issued. (Compl. ¶¶ 43-44).

Plaintiff further alleges that PAM violated the FDCPA by sending him a notice dated March 26, 2012 that contradicted and overshadowed PAM's March 20th notice in the following ways: the March 26th notice falsely stated that (1) PAM had not yet received a response from Plaintiff; (2) the matter would not be resolved until payment was received in full; and (3) he could no longer appeal or further adjudicate the unpaid citation(s), when, according to Plaintiff, the evidence proves that not only could he further adjudicate the unpaid Citation, he did so successfully. (Id. ¶ 46). Plaintiff asserts that the notice's reference to multiple "citation(s)" – plural – constitutes yet another violation of the FDCPA, since there was only one citation. (Id. & n.4).

Defendants argue that the FDCPA simply does not apply here because a parking ticket issued by a municipality for a code violation is not a "debt" as defined in the FDCPA since it did not arise from a consensual consumer transaction. The Court agrees.

The FDCPA was intended by Congress to eliminate abusive debt collection practices by debt collectors and to promote consistent state action to protect consumers



AO 72A
(Rev.8/82)

against debt collection abuses. 15 U.S.C. § 1692, *et seq*. 15 U.S.C. § 1692e provides, in pertinent part, that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of (A) the character, amount, or legal status of any debt;
> ...
> (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> ...
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
> ...
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

According to the Eleventh Circuit, section 1692e makes the existence of a "debt" a threshold requirement for the section's applicability. <u>Hawthorne v. Mac Adjustment,</u>



AO 72A
(Rev.8/82)

Inc., 140 F.3d 1367, 1370-71 (11th Cir. 1998) (citing Mabe v. G.C. Servs. Ltd. Partnership, 32 F.3d 86, 88 (4th Cir. 1994); Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3d Cir. 1987); Riebe v. Juergensmeyer and Assocs., 979 F. Supp. 1218, 1220 (N.D. Ill. 1997)). "The FDCPA defines 'debt,' in turn, as 'any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to a judgment.'" Id. at 1371 (quoting 15 U.S.C. § 1692a(5)). "By the plain terms of the statute, not all obligations to pay are considered 'debts' subject to the FDCPA." Id. (citing Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1324 (7th Cir. 1997)). "Rather, the FDCPA may be triggered only when an obligation to pay arises out of a specified 'transaction.'" Id.

Although the FDCPA does not define "transaction," the Eleventh Circuit has concluded that, "The ordinary meaning of 'transaction' necessarily implies some type of business dealing between parties [citations omitted]. In other words, when we speak of 'transactions,' we refer to consensual or contractual arrangements, not damage obligations thrust upon one as a result of no more than her own negligence." Id. (citing Bass, 111 F.3d at 1326 ("[T]he FDCPA limits its reach to those obligations to pay



AO 72A
(Rev.8/82)

arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services.")). In Hawthorne, the Eleventh Circuit held that because the plaintiff's alleged obligation to pay for damages arose out of an automobile accident rather than a consensual consumer transaction or business dealing, the obligation to pay did not constitute a "transaction" or "debt" under the FDCPA. Id. The Court noted in passing that its holding was consistent with the Federal Trade Commission's ("FTC") staff commentary on the meaning of the term "debt" under the FDCPA. See id. n.2 (citing FTC Statements of General Policy or Interpretation, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50102 (Dec. 13, 1988)). The Court observed that "[i]n providing examples of obligations that the FTC considered 'exclu[ded]' from the definition of a 'debt' under the FDCPA," the FTC stated, "The term does not include: [Unpaid taxes, fines, alimony, or] tort claims, because they are not debts incurred from a 'trans[action] (involving purchase of) property ... or services ... for personal, family or household purposes.'" Id.[4]

---

[4] See also FTC Staff Opinion Letter, dated September 16, 1997, *available at* http://www.ftc.gov/os/statutes/fdcpa/letters/cheswort.htm (last visited November 18, 2013) (stating that the Federal Trade Commission staff "does not consider fines to be 'debts' under Section 803(5) of the FDCPA, because they do not originate from a transaction involving the purchase of property or services for personal, family or household purposes. Therefore, to the extent that your client is engaged in activities collecting unpaid parking fines, we do not believe that these activities are covered by



AO 72A
(Rev.8/82)

The numerous other circuit and district courts that have ruled on what constitutes a "transaction" and/or "debt" under the FDCPA have uniformly concluded that a consensual consumer transaction or business dealing is required, and that an obligation to pay imposed on someone involuntarily is not a "debt" that triggers the FDCPA. See, e.g., Gulley v. Markoff & Krasny, 664 F.3d 1073, 1074-75 (7th Cir. 2011) (unpaid fines for violating municipal code were not "debts" under FDCPA since fines did not stem from consensual consumer transactions for goods or services); Fleming v. Pickard, 581 F.3d 922, 925-26 (9th Cir. 2009) (tortious conversion of stolen goods not "debt" under FDCPA); Beggs v. Rossi, 145 F.3d 511, 512-13 (2d Cir. 1998) (citing with approval FTC Staff Commentary on FDCPA and holding that personal property tax obligations were not "debts" within the meaning of the FDCPA); Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1326 (7th Cir. 1997) ("[A]lthough a thief undoubtedly has an obligation to pay for the goods or services he steals, the FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services."); Mabe v. G.C. Servs. Ltd. Partnership, 32 F.3d 86, 88 (4th Cir. 1994) (obligation to pay child support not "debt" under FDCPA); Zimmerman v. HBO

---

the FDCPA.").



AO 72A
(Rev.8/82)

Affiliate Group, 834 F.2d 1163, 1167 (3d Cir. 1987) (obligation to pay money arising out of suspected theft of property or services does not constitute "debt" under the FDCPA); Staub v. Harris, 626 F.2d 275, 278-789 (3d Cir. 1980) (taxes not "debt" under the FDCPA).

A number of district courts confronting the specific issue of whether a municipal fine constitutes a "debt" under the FDCPA have similarly concluded that a fine does not stem from a consensual transaction and therefore is not a "debt" under the FDCPA. See Gibson v. Professional Account Mgmt., No. 11-12920-BC, 2011 WL 6019958, at *2 (E.D. Mich. Dec. 1, 2011) ("A parking ticket (even one which the vehicle owner settles with the municipality for less than the standard fine) does not rest comfortably within this definition of 'consensual transaction.'") (citing Graham); Reid v. American Traffic Solutions, Inc., Nos. 10-cv-204-JPG-DGW, 10-cv-269-JPG, 2010 WL 5289108, at *4-5 (S.D. Ill. Dec. 20, 2010) ("fines [for running red lights] are penalties for violating traffic ordinances that were enacted by municipal legislative bodies. Like parking tickets in Graham and traffic fines in Mills, they are not debts under the FDCPA."); Mills v. City of Springfield, No. 2:10-cv-04036-NKL, 2010 WL 3526208, at *15-16 (W.D. Mo. Sept. 3, 2010) (holding that citations and fines for violating municipal red light ordinance were not "debts" under the FDCPA); Fox v. California Franchise Tax Board, No. 08-cv-



AO 72A
(Rev.8/82)

01047-PAB-BNB, 2010 WL 56094, at *3, *8 (D. Colo. Jan. 5, 2010) (concluding that plaintiff's FDCPA claim "fails to state a cause of action because the debt at issue is based on a parking fine and therefore is not a 'debt' within the meaning of the Fair Debt Collection Practices Act"); Graham v. ACS State and Local Solutions, Inc., No. 06-2708 (JNE/JJG), 2006 WL 2911780, at *1-2 (D. Minn. Oct. 10, 2006) (citing Hawthorne) ("the Court fails to see how the receipt of a parking ticket, which is a legally imposed fine for parking one's vehicle in an unauthorized location, can constitute a consumer transaction."). Several of these cases involve citations issued by private entities on behalf of a municipality. See Gibson, 2011 WL 6019958 (E.D. Mich. Dec. 1, 2011); Mills, 2010 WL 3526208 (W.D. Mo. Sept. 3, 2010); Graham, 2006 WL 2911780 (D. Minn. Oct. 10, 2006).

In the complaint filed in this action, Plaintiff has not pled any facts that plausibly suggest that the fine at issue in this case is the product of a consensual consumer transaction. Nor has Plaintiff cited a single case that supports his claim that a parking ticket issued for a municipal code violation constitutes a "debt" under the FDCPA. Although Plaintiff now contends that he intentionally entered into a consensual transaction for the provision of a license to park his personal vehicle in a particular location for a period of time for entirely personal reasons, his complaint contains no

such allegation (or any factual support at all for such a claim). (Doc. 12 at 8). Plaintiff has also failed to offer any reasonable explanation for how not paying for a "parking license" and refusing to acknowledge that he had any obligation at all to pay to park where he did constitutes a consensual consumer transaction for consumer-related goods or services.

Plaintiff's chief support for his FDCPA claim is a Washington case, Hansen v. Ticket Track, Inc., 280 F. Supp. 2d 1196 (W.D. Wash. 2003), that Plaintiff contends holds that a "parking citation is 'debt' as defined by [the] FDCPA." (Compl. ¶ 36). The case, however, is easily distinguishable. In Hansen, the defendant, Ticket Track, Inc., contracted with the owners or managers of private unmanned parking lots for the collection of unpaid parking fees when customers parked in the lots and failed to pay the required fee. "Customers [were] made aware of their obligation to pay and the possible imposition of extra fees for failure to pay by way of large signs posted at each of the lots." Hansen, 280 F. Supp. 2d at 1198. The court determined that the alleged "debt" arose out of a transaction – i.e., an implied contract for parking fees between the parking lot customers and the lot owners; the defendant was a third party collection agency attempting to collect the parking fee owed to its client(s), along with a surcharge or violation fee; and thus the "debt" was subject to the FDCPA. Id. at 1203.



AO 72A
(Rev.8/82)

By contrast, in Plaintiff's case, Plaintiff was not acting as a consumer or customer contracting to park in a private parking lot, and the imposition of the parking citation and fine was not consensual. Rather, the fine at issue was a penalty for violating a municipal parking ordinance.

Although Plaintiff has argued at length about what constitutes a "debt collector" under the FDCPA, that is not the issue before the Court. The issue is whether the subject parking fine and related late fee are the product of a consensual consumer transaction for goods or services and thus constitute a "debt" under the FDCPA.

Plaintiff argues that Defendant PAM is somehow estopped from denying that the obligation at issue in this case is a debt, under the FDCPA, because in its correspondence to Plaintiff, PAM referred to itself as a debt collection company and stated that its notices were attempts to collect a debt. (Doc. 13 at 23-24). However, as discussed above, the definition of "debt" under the FDCPA is narrower than the general definition of debt. See Gibson, 2011 WL 601958, at *2 (stating that the FDCPA "does not broadly apply to all debts; rather, it applies only to specific types of debts—those arising out of 'consensual transactions.' ... [T]he FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or



AO 72A
(Rev.8/82)

contract for consumer-related goods or services.") (internal citations and quotation marks omitted).

In addition, an essential element of estoppel is a change in the respective positions of the parties. Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1169 (3d Cir. 1987); nVision Global Tech. Solutions, Inc. v. Cardinal Health 5, LLC, 887 F. Supp. 2d 1240, 1273 (N.D. Ga. 2012) ("'[E]stoppel requires an act on the part of one intended to influence the other, and detrimental reliance upon that act by the other.'"). Plaintiff has not claimed that he paid any money or otherwise changed his position in reliance on PAM's characterization of the asserted obligation in connection with PAM's collection efforts. Consequently, Plaintiff's estoppel argument is without legal basis or merit. See Zimmerman, 834 F.2d at 1169. Plaintiff's remaining arguments are similarly without legal or factual merit.

Based on the circumstances of this case and the persuasive authority cited above, I find that the parking fine and late fee at issue do not constitute a "debt" within the meaning of the FDCPA.[5] For all the reasons stated, I recommend that Defendants'

---

[5] Even if the FDCPA were applicable to the fine and collection efforts at issue in this case (which it is not), the FDCPA's one-year statute of limitations would bar Plaintiff's claim. Plaintiff alleges and argues that the correspondence dated and sent by PAM to Plaintiff on February 8, 2012, March 20, 2012, and March 26, 2012 violated the FDCPA in the specific ways set out above and in Plaintiff's complaint.



AO 72A
(Rev.8/82)

motion to dismiss Plaintiff's FDCPA claim be granted for failure to state a viable claim under the FDCPA.

### 2. Fair Credit Reporting Act/Fair & Accurate Credit Transactions Act (Count Two)

In Count Two, Plaintiff alleges that Defendant PAM violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2, *et seq.*, by knowingly providing inaccurate information to one or more consumer reporting agencies ("CRAs"), even after Plaintiff had put PAM (and the CRAs) on written notice that he disputed the accuracy of the information. (Compl. ¶¶ 55-57).

As Defendants point out, while the heading for Count Two states, "Violations of the Fair Credit Reporting and Fair & Accurate Credit Transactions Acts (FCRA-FACTA)," none of the allegations in Count Two pertain to or even reference FACTA; only the FCRA is mentioned. Congress's stated purpose in enacting FACTA was to

---

Plaintiff repeatedly alleges that he did not receive either the second or third letters until March 29, 2012. However, the Eleventh Circuit has held that in computing the statute of limitations, the one-year period of limitations begins to run on the day after the defendant mailed the collection letter, rather than the mailing date or the date that the plaintiff received the collection letter(s). Maloy v. Phillips, 64 F.3d 607, 608 (11th Cir. 1995).

In Plaintiff's case, the FDCPA's one-year statute of limitations would have been triggered – at the latest – on March 27, 2012, the day after the last collection letter was mailed to Plaintiff. Plaintiff did not file his complaint until March 28, 2013. Thus, Plaintiff's complaint was filed outside the FDCPA's one-year statute of limitations.



AO 72A
(Rev.8/82)

prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud. See 15 U.S.C. § 1681n, "Findings; Purpose," Pub. L. 110-241, § 2, June 3, 2008, 122 Stat. 1565. To that end, FACTA prohibits vendors from including more than the last five digits of a credit card number or the expiration date on a customer's credit card receipt at the point of sale. 15 U.S.C. § 1681c(g). The act also establishes requirements for what information CRAs must include in and/or exclude from consumer reports. Id. § 1681c(a)-(f). Because the allegations in Count Two of Plaintiff's complaint do not mention or identify any particular provision of FACTA that was allegedly violated, Defendants state that they have not addressed any claim under FACTA in their motion to dismiss.

In Plaintiff's response in opposition to Defendants' motion to dismiss, Plaintiff has failed to address the applicability of FACTA or to defend any claim under FACTA. In this circuit, a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned. See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1326 (11th Cir. 2000) (stating that a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned); Kirkland v. County Comm'n of Elmore County, Ala., No.



AO 72A
(Rev.8/82)

2:08-cv-86-MEF, 2009 WL 596538, at *2 (M.D. Ala. Mar. 6, 2009) (listing cases concluding that a plaintiff's failure to respond to arguments in a defendant's motion to dismiss properly resulted in dismissal of those claims as abandoned); Hooper v. City of Montgomery, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (concluding that a plaintiff's failure to respond to claims in a defendant's motion to dismiss resulted in dismissal of those claims as abandoned); White v. Ga. Dep't of Motor Vehicle Safety, No. 1:06-CV-0124-TWT, 2006 WL 1466254, at *1 (N.D. Ga. May 19, 2006) ("it is well-accepted in this district that the failure to respond to arguments relating to a claim constitutes abandonment of the claim."). Accordingly, to the extent that Plaintiff sought in his complaint to assert a claim under FACTA, the Court will deem such claim abandoned.

With regard to the FCRA, Plaintiff specifically alleges that on December 20, 2012, he sent letters to the three main CRAs (Equifax, Experian, and Trans Union) disputing the accuracy and/or existence of the alleged debt/collection item from Defendant PAM that had appeared in one or more of Plaintiff's credit reports. (Compl. ¶ 56). Despite his letters, Plaintiff alleges that at least one of the CRAs continued to report the alleged PAM debt/collection item as recently as February 2013. (Id. ¶ 57). Plaintiff alleges that he does not know for certain if any of the CRAs ever contacted

PAM concerning his debt dispute, but he speculates that the CRAs "presumably found Plaintiff's dispute and notice thereof to be timely and proper and to have merit and worthy of passing along to PAM." (Id. ¶ 59). Plaintiff then alleges that "it must be assumed – and it was implied by the CRA(s) – that PAM willfully, unlawfully and erroneously validated the alleged debt in response to the CRA(s)' request, which had been triggered by Plaintiff's dispute." (Id. ¶ 57).

In general, the FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). To achieve its purpose, the FCRA places distinct obligations on three types of entities: CRAs, users of consumer reports, and furnishers of information to CRAs. Chipka v. Bank of America, 355 F. App'x 380, 382 (11th Cir. 2009) (citing 15 U.S.C. §§ 1681b, 1681m, and 1681s-2).

In this case, Plaintiff appears to be alleging that Defendant PAM violated the FCRA by failing to comply with its obligations as a furnisher of information. (Compl. ¶¶ 57-58, 60-64). The FCRA imposes two separate duties on furnishers. Green v. RBS Nat'l Bank, 288 F. App'x 641, 642 (11th Cir. 2008). First, § 1681s-2(a) requires



AO 72A
(Rev.8/82)

furnishers to submit accurate information to CRAs. Id. Second, § 1681s-2(b) requires furnishers to investigate and respond promptly to notices of customer disputes. Id.

Plaintiff generally alleges that Defendant PAM violated the FCRA by knowingly submitting inaccurate information to one or more CRAs regarding Plaintiff's unpaid parking Citation. (Compl. ¶ 55). Although § 1681s-2(a) requires furnishers to submit accurate information to CRAs, the FCRA does not provide a private right of action to redress such a violation. Steed v. EverHome Mortg. Co., 308 F. App'x 364, 369-70 (11th Cir. 2009). Only "federal agencies, federal officials, and state officials" may enforce this provision. See Green, 288 F. App'x at 642 n.2 (citing 15 U.S.C. §§ 1681s-2(c), (d); 15 U.S.C. § 1681s(c)(1)(B)). Thus, to the extent that Plaintiff is seeking in his complaint to assert a claim under § 1681s-2(a), that claim is due to be dismissed.

The FCRA does provide consumers with a private right of action for a violation of § 1681s-2(b), but only if the furnisher received notice of the consumer's dispute from a CRA. Green, 288 F. App'x at 642. Section 1681s-2(b) imposes duties on furnishers of information to, *inter alia*, investigate disputed information and report the results of any such investigation to the CRA. 15 U.S.C. § 1681s-2(b). A furnisher's duties under the statute are not triggered, however, until after a furnisher receives notice from a CRA

of a consumer's dispute with regard to the completeness or accuracy of the information in a consumer's credit report. See id.

For Plaintiff to prevail on his FCRA claim pursuant to § 1681s-2(b), Plaintiff must establish that he notified a consumer reporting agency that he disputed the completeness or accuracy of information in his credit report that was furnished by Defendant PAM, the CRA gave notice of Plaintiff's dispute to Defendant PAM as a furnisher, and Defendant PAM did any one of the following: (1) failed to conduct a reasonable investigation of the identified dispute(s); (2) failed to review all relevant information provided by the CRA; (3) failed to report the results of its investigation to the CRA; or (4) if an item of information disputed by Plaintiff was found to be inaccurate, incomplete, or it could not be verified after any reinvestigation, failed to modify, delete, or permanently block the reporting of that item of information. See Howard v. DirecTV Group, Inc., No. CV 109-156, 2012 WL 1850922, at *4 (S.D. Ga. May 21, 2012) (citing 15 U.S.C. § 1681s-2(b)); see also Taylor v. Chase Auto Fin. Corp., 850 F. Supp. 2d 637, 642 (N.D. Miss. 2012) ("To plausibly state a FCRA claim ..., Plaintiff would have to allege that a consumer reporting agency gave notice of Plaintiff's dispute to Chase, as a furnisher").

In their motion to dismiss, Defendants argue that Plaintiff has failed to sufficiently plead or demonstrate either (1) that Defendant PAM was notified by one or more CRAs that Plaintiff disputed the accuracy of the information PAM had reported to the CRA(s), or (2) that PAM failed to investigate or respond promptly to any such notice. (Doc. 9 at 13). Defendants argue that Plaintiff's allegation that "the CRAs presumably found Plaintiff's dispute and notice thereof to be timely and proper and to have merit and worthy of passing along to PAM" amounts to nothing more than speculation, and, under Iqbal, such speculation does not permit the Court "to infer more than the mere possibility of misconduct"; thus, "the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950; (Compl. ¶ 59). PAM asserts that Plaintiff's formulaic recitations of the elements of a FCRA claim "couched as factual allegations" in paragraphs 60-64 of the complaint ("upon information and belief") are also insufficient to withstand a Rule 12(b)(6) motion to dismiss, as clarified in Iqbal/Twombly. PAM argues that because Plaintiff failed to expressly allege that the CRAs forwarded Plaintiff's dispute to PAM, Plaintiff's claim under the FCRA must be dismissed for failure to state a claim. In response, Plaintiff argues that PAM's position is misplaced and without adequate legal support.

The main question before this Court is whether Plaintiff must have explicitly pled that one or more of the CRAs notified Defendant PAM of the disputed information in order to avoid a Rule 12(b)(6) dismissal. Neither party has cited authority for the proposition that where the plaintiff has alleged notification of both the national credit bureaus and the furnisher, but does not explicitly allege that the CRAs notified the furnisher, he always fails to state a claim.

This Court has reviewed a number of cases addressing the degree of precision with which a plaintiff must plead that notification actually took place in order to state a claim under § 1681s-2(b), and finds the district court's discussion and analysis in Himmelstein particularly persuasive. See Himmelstein v. Comcast of the District, LLC, 931 F. Supp. 2d 48, 53-54 (D.D.C. 2013). In Himmelstein, it was noted that federal courts have taken a variety of approaches to the degree of pleading precision required to withstand a Rule 12(b)(6) dismissal. Id. (*comparing* Carlson v. Trans Union, LLC, 259 F. Supp. 2d 517, 519-20 (N.D. Tex. 2003) (noting that while it is "clear from § 1681s-2(b)(1) that Plaintiff must indeed prove that ... notification [from the CRA to the furnisher] occurred to succeed on his claims[,] ... Plaintiff is not required to plead all elements of a prima facie case to avoid 12(b)(6) dismissal. All that is required is fair notice of the claim and the ground on which it rests.") *with* Dornhecker v. Ameritech



AO 72A
(Rev.8/82)

Corp., 99 F. Supp. 2d 918, 928-29 (N.D. Ill. 2000) (dismissing without prejudice to amend where plaintiff alleged he personally notified furnisher of dispute, but did not allege furnisher was notified by the CRA), *and* Ryder v. Washington Mut. Bank, FA, 371 F. Supp. 2d 152, 154 (D. Conn. 2005) (dismissing for failure to state a claim where plaintiff alleged only that he had contacted the furnisher, but did not allege that disputed claim was properly investigated upon notification by a CRA)). The court noted that where a plaintiff pleads notice to a CRA, "to also require an allegation that the CRA notified the furnisher seems overly formalistic," especially in light of the FCRA's extremely "complex statutory scheme" that makes it difficult for the layperson or average consumer to comply with the statute's procedural requirements. See id. at 54 (citations omitted).

Under § 1681s-2(b), a furnisher's duties to investigate disputes and correct erroneous information are triggered "[a]fter receiving notice *pursuant to section 1681i(a)(2)* of this title." Id. (emphasis added). The court noted that section 1681i(a)(2) of the FCRA requires that a CRA that receives notice from a consumer of a disputed debt "shall provide notification of the dispute to any [furnisher] ... [including] all relevant information regarding the dispute" within "the 5-business-day period beginning" when the CRA receives such notice. Id. (underlining added). The court



AO 72A
(Rev.8/82)

stated that "[a]s a result, the only allegation missing from [the plaintiff's complaint] is that the national credit bureaus fulfilled their legal responsibility to notify [the defendant]." Id. Given the long-standing presumption under the law that "every man ... does his duty, until the contrary is proved; [and] it will presume that all things are rightly done, unless the circumstances of the case overturn this presumption [citations omitted]," the court concluded that it could find no reason why, "given that Plaintiff is entitled to 'all inferences that can be derived' from the Complaint, he [was] not entitled to this long-held, fundamental presumption." Id. at 55.

The same presumption applies here. While PAM may introduce evidence at summary judgment that shows such notice did not actually occur, at this stage the Court is bound to grant Plaintiff the presumption that the credit bureaus complied with the FCRA and in fact notified PAM of the disputed debt. This is particularly appropriate where the Plaintiff could not independently know of such notification. Id.; see also Davis v. Trans Union LLC, 526 F. Supp. 2d 577, 585 (W.D.N.C. 2007) ("The Defendant, however, has not provided any authority, nor has the Court found any, to support the argument that a complaint is fatally deficient under the FCRA if it fails to allege that a furnisher of credit information was contacted within five days of a credit reporting agency receiving notice of a consumer's dispute. Without the benefit of

discovery at the pleading stage of litigation, the Plaintiff would presumably lack the [requisite] knowledge of whether Defendant received notice within five days, and adopting such a burdensome requirement would be contrary to the goals of notice pleadings."); Watson v. Trans Union Credit Bureau, No. 04-205-B-C, 2005 WL 995687, at *5 (D. Me. Apr. 28, 2005) (permitting inference "that the credit reporting agency was complying with the clear and rather simple mandate of the law" and refusing to dismiss action "for want of a straw allegation [of communication between the CRA and the furnisher]"); Vazquez-Garcia v. Trans Union de Puerto Rico, 222 F. Supp. 2d 150, 158-59 (D.P.R. 2002) (denying motion to dismiss despite plaintiff's failure to specifically plead that the CRA had complied with § 1681i(a)(2) and provided notice of the dispute to the furnisher, noting that when "information [regarding the CRA's communications with the furnisher] is provided to plaintiff in discovery, it will become clear whether plaintiff will be able to adequately prove his claim .... At this stage, it ... is not necessary, nor possible, for the Court to decide ... whether plaintiff will be able to establish sufficient proof for his claim."). At summary judgment, however, Plaintiff must prove that such notice actually occurred, and that PAM failed to conduct a reasonable investigation of the disputed information, failed to review the information in the notice(s) from the credit bureau(s), failed to report the results of its investigation

to the credit bureau(s), and/or if an item of information disputed by Plaintiff was found to be inaccurate, incomplete, or it could not be verified after any reinvestigation, failed to modify, delete, or permanently block the reporting of that item of information.

Defendants argue that Plaintiff has also failed to sufficiently plead that PAM failed to investigate or respond promptly to notification by the CRAs of Plaintiff's dispute. This argument lacks merit. Paragraphs 58 and 60 of Plaintiff's complaint both allege that PAM failed to timely comply with its investigative and reporting obligations under the FCRA after receiving notification from one or more of the CRAs that Plaintiff disputed the accuracy of the information PAM had reported. (Compl. ¶¶ 58, 60).

While Plaintiff's pleadings could be more specific regarding the entire sequence of events, I find that the facts as currently alleged and all inferences that can be derived from them are sufficient to provide Defendants with "fair notice of what the ... claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964. Accordingly, I **RECOMMEND** that Defendants' motion to dismiss Plaintiff's claim(s) under § 1681s-2(b) of the FCRA be **DENIED**.

**B. STATE LAW CLAIMS**

The remaining seven counts in Plaintiff's complaint allege violations of state law and/or seek injunctive relief under state law. (Compl. at 26-30).



AO 72A
(Rev.8/82)

Defendants argue that the FCRA preempts the state law claims against PAM that Plaintiff has asserted that relate to the furnishing of credit information. Other than disputing preemption of emotional distress damages, Plaintiff does not meaningfully challenge or attempt to refute Defendants' FCRA preemption argument.

Section 1681t(b)(l)(F)of the FCRA provides: "No requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ... section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies ...." 15 U.S.C. § 1681t(b)(l)(F). This Court has held that section 1681t(b)(l)(F) preempts both state statutory and common law claims, so long as the legal duty giving rise to the claim relates to the subject matter regulated under section 1681s-2. See Horton v. HSBC Bank, No. 1:11-cv-3210-TWT, 2013 WL 2452273, at *13, *15 (N.D. Ga. June 5, 2013) (denying as futile plaintiff's motion to file a second amended complaint to add state law claims pursuant to Georgia's Uniform Deceptive Trade Practices Act and Fair Business Practices Act because the state law claims arose from and were related to defendants' alleged failure, as furnishers of information, to properly report information to the three credit bureaus about the plaintiff's accounts, and therefore the claims were preempted by the FCRA); see also Spencer v. Nat'l City Mortg., 831 F. Supp. 2d 1353, 1365 (N.D.

Ga. 2011) (holding that plaintiff's defamation claim was preempted in its entirety by the FCRA, and plaintiff's claims for breach of contract and intentional infliction of emotional distress were preempted, but only to the extent the conduct giving rise to the claims was regulated under § 1681s-2).[6]

---

[6] There has been some dispute among district courts, including courts in this district, as to whether § 1681t(b)(1)(F) preempts common law causes of action as well as statutory claims, and whether it preempts all claims related to a furnisher's duties or merely those that arise after the furnisher has notice from the consumer of a dispute. See, e.g., Spencer v. Nat'l City Mortg., 831 F. Supp. 2d 1353, 1358 (N.D. Ga. 2011) (describing debate among courts as to whether § 1681t(b)(1)(F) provides for total preemption, statutory preemption, or temporal preemption, or emerging fourth approach that no conflict exists). The source of this dispute is a second FCRA preemption provision that predates § 1681t(b) (1)(F) by almost thirty years. See 15 U.S.C. 1681h(e) (providing for preemption of only common law claims "in the nature of defamation, invasion of privacy, or negligence" against furnishers of information "based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title" unless the plaintiff can demonstrate "false information furnished with malice or willful intent to injure such consumer."). The circuit courts to have considered the question have adopted the fourth "no conflict" approach, ruling that § 1681t(b)(1)(F) preempts both state statutory and common law causes of action. See Purcell v. Bank of America, 659 F.3d 622, 624-25 (7th Cir. 2011) (concluding that there is no conflict between the two preemption provisions because "Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies, while § 1681t(b)(1)(F) preempts more of these claims."); Macpherson v. JPMorgan Chase Bank, N.A., 665 F.3d 45 (2d Cir. 2011) (agreeing with and adopting 7th Circuit's reasoning that there is no conflict between the two preemption provisions, and holding that section 1681t(b)(1)(F) preempted all causes of action not expressly excepted); Ross v. FDIC, 625 F.3d 808, 813 (4th Cir. 2010) (stating that the purpose of the second preemption provision, 15 U.S.C. § 1681t(b)(1)(F), added as part of the 1996 amendments to the FCRA was, "in part, to avoid a patchwork system of conflicting regulations"). This Court finds the fourth "no conflict" approach persuasive and will apply the approach

### 1. Violations of the Georgia Fair Business and Deceptive Trade Practices Acts (Count One)

In Count One of Plaintiff's state law claims, Plaintiff alleges that Defendants violated the Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-390, *et seq.*, "and or" the Uniform Deceptive Trade Practices Act ("UDTPA"), O.C.G.A. § 10-1-370, *et seq.*, by "engaging in, facilitating and or failing to take reasonable steps to prevent the actions related to the [alleged] consumer transactions." (Compl. ¶ 66). Plaintiff alleges that Defendants also violated section 10-1-372(a)(12) of UDTPA by engaging in conduct which created a likelihood of confusion or of misunderstanding. (Compl. ¶ 67).

The GFBPA makes it unlawful to use "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." O.C.G.A. § 10-1-393(a). "Consumer transaction" is defined as "the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes." O.C.G.A. § 10-1-392(a)(10). "Consumer acts or practices" are defined as "acts or practices intended to encourage consumer transactions." O.C.G.A. § 10-1-392(a)(7). "Trade" and "commerce," as defined in the

---

that § 1681t(b)(1)(F) preempts both state statutory and common law causes of action.



AO 72A
(Rev.8/82)

Act, "mean the advertising, distribution, sale, lease, or offering for distribution, sale, or lease of any goods, services, or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever situate and shall include any trade or commerce directly or indirectly affecting the people of [Georgia]." O.C.G.A. § 10-1-392(a)(28).

The Georgia Court of Appeals has held that the GFBPA is applicable to the collection of a debt by a collection agency. State ex rel. Doyle v. Frederick J. Hanna & Assocs., P.C., 287 Ga. 289, 292, 695 S.E.2d 612, 615 (2010) (citing 1st Nationwide Collection Agency, Inc. v. Werner, 288 Ga. App. 457, 459, 654 S.E.2d 428, 431 (2007)). Under Georgia law, a "[v]iolation of the FDCPA is sufficient to create a violation of the GFBPA." Kuria v. Palisades Acquisition XVI, LLC, 752 F. Supp. 2d 1293, 1300 n.6 (N.D. Ga. Nov. 16, 2010) (Forrester, J., adopting Vineyard, M.J.) (citing Werner); see also Gilmore v. Account Mgmt., Inc., 357 F. App'x 218, 220-21 (11th Cir. Dec.16, 2009).

Here, Plaintiff has failed to state a plausible claim under the GFBPA. First, as discussed above, Plaintiff has failed to demonstrate that the subject municipal parking ordinance violation constitutes a consumer transaction. Second, Plaintiff has failed to

state a claim under the FDCPA, so to the extent Plaintiff is basing his GFBPA claim on a violation of the FDCPA, his GFBPA claim also fails.

Plaintiff has also failed to state a plausible claim under Georgia's UDTPA statute. O.C.G.A. § 10-1-372 is the state analogue to the federal Lanham Act. Pacific Western, Inc. v. LandAmerica Credit Servs., Inc., No. 1:05-CV-0895-JEC, 2007 WL 1970870, at *4 (N.D. Ga. June 29, 2007) (citing Kason Indus., Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1203 (11th Cir. 1997) ("It should be apparent that § 43(a) of the Lanham Act and § 10-1-372(a)(2) of the UDTPA provide analogous causes of action governed by the same standard.")). Like the Lanham Act, section 10-1-372 primarily deals with trade practices that are likely to cause confusion in the marketplace, such as passing off goods or creating a false impression as to the source, sponsorship or approval of goods. Id. (citing O.C.G.A. § 10-1-372(a)(1)-(12)).

The UDTPA provides a cause of action when a person, "in the course of his business, vocation, or occupation ... [c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services" or "[e]ngages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." O.C.G.A. § 10-1-372(a)(2), (12). Defendants' alleged actions in this case are not among the specifically enumerated practices that

§ 10-1-372 defines as "deceptive." Plaintiff has not identified or pointed to any other legal basis for his "deceptive trade practices" claim.

For the reasons stated, Plaintiff has failed to state a plausible claim under either the GFBPA or Georgia's UDTPA. Plaintiff's GFBPA and UDTPA claims also arise from and are related to Defendant PAM's alleged failure, as a furnisher of information, to properly report information to the three credit bureaus about Plaintiff's parking fine and penalty. Accordingly, the Court finds that these state law claims are preempted by the FCRA. Horton, 2013 WL 1452273, at *15; see also Howard v. DirecTV Group, Inc., No. CV 109-156, 2012 WL 1850922, at *7 (S.D. Ga. May 21, 2012) (concluding that state law defamation claim was preempted by section 1681t(b)(1)(F) of the FCRA).

For all the reasons stated, I recommend that Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's claims under the GFBPA and UDTPA (set forth in Count One in the state law section of Plaintiff's complaint) be granted.

**2. Defamation-Slander-Libel (Count Two)**

In Count Two of his state law claims, Plaintiff alleges that Defendants slandered, libeled and/or defamed Plaintiff by communicating false, inaccurate and misleading information to one or more third parties, including the CRAs, with malice or willful



AO 72A
(Rev.8/82)

intent to injure him, thereby injuring his reputation and undermining his financial situation. (Compl. ¶¶ 70-72).

To establish a claim for slander (or oral defamation) under Georgia law, a plaintiff must allege and show that the defendant: (1) imputed to another a crime punishable by law; (2) charged a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society; (3) made charges against another in reference to his trade, office, or profession, calculated to injure him therein; or (4) uttered any disparaging words productive of special damage which flows naturally therefrom. See O.C.G.A. § 51-5-4.

Plaintiff's complaint fails to state a claim for slander because he has not alleged any oral defamation by the Defendants to any third parties, or any other slanderous conduct set out under the statute. See Stroman v. Bank of America Corp., 852 F. Supp. 2d 1366, 1377 (N.D. Ga. 2012) (citing O.C.G.A. § 51-5-4(a)).

To plead a cause of action for defamation, a plaintiff must allege and show (1) a false and defamatory statement about himself; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special damages or defamatory words 'injurious on their face.'" See Jenkins v. BAC Home Loan Servicing, LP, 822 F. Supp. 2d 1369, 1378-79 (M.D. Ga. 2011)



AO 72A
(Rev.8/82)

(citing Chaney v. Harrison & Lynam, LLC, 308 Ga. App. 808, 811, 708 S.E.2d 672, 676 (2011)). In addition, a plaintiff must show that the statement was published. Id. (citing Lewis v. Meredith Corp., 293 Ga. App. 747, 748, 667 S.E.2d 716, 718 (2008)).

Libel is essentially defamation in written form. Id. It is defined as "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1(a). Publication is also an essential element of libel. O.C.G.A. § 51-5-1(b). "Georgia courts have required a plaintiff to allege facts indicating actual malice in order to recover for libel, meaning that the 'allegedly defamatory matter was uttered with knowledge that it was false or reckless disregard for whether it was true or false.'" Stroman, 852 F. Supp. 2d at 1377-78 (citing Hammer v. Slater, 20 F.3d 1137, 1142 (11th Cir. 1994)). "Reckless disregard for the truth or falsity is shown when a defendant 'entertained serious doubts as to the truth of his publication.'" Id.

Here, Plaintiff has failed to set forth sufficient facts that would make it plausible that Defendants communicated to the consumer reporting agencies false or misleading information with actual malice. Instead, as with all of Plaintiff's other state law claims, Plaintiff has merely pled formulaic recitations of the elements of a claim for



AO 72A
(Rev.8/82)

defamation/libel. Under Iqbal, such bare assertions are not entitled to the assumption of truth. Iqbal, 556 U.S. at 680-81.

Plaintiff's slander, libel and defamation claims also arise from and are related to Defendant PAM's alleged failure, as a furnisher of information, to properly report information to the three credit bureaus about Plaintiff's parking fine and penalty. Accordingly, these state law claims are preempted by the FCRA. See Howard v. DirecTV Group, Inc., No. CV 109-156, 2012 WL 1850922, at *7 (S.D. Ga. May 21, 2012) (concluding that state law defamation claim was preempted by section 1681t(b)(1)(F)).

For the reasons stated, Plaintiff's claims for slander, libel and defamation do not survive Defendants' Rule 12(b)(6) motion to dismiss. I recommend, therefore, that Defendants' motion to dismiss Plaintiff's state law claims for slander, libel and defamation be granted.

**3. Intentional Infliction of Emotional Distress (Count Three)**

In Count Three of his state law claims, Plaintiff asserts a one-paragraph claim for intentional infliction of emotional distress as a result of Defendants' alleged intentional and willful misconduct. Plaintiff has failed to allege or show the underlying facts necessary to establish the elements of such a claim.



AO 72A
(Rev.8/82)

Under Georgia law, a plaintiff must allege and show (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the alleged conduct and the emotional distress; and (4) severe emotional injury. Jarrard v. United Parcel Serv., Inc., 242 Ga. App. 58, 59, 529 S.E.2d 144, 146 (2000); Bridges v. Winn-Dixie Atlanta, Inc., 176 Ga. App. 227, 230, 335 S.E.2d 445, 447-48 (1985). Georgia courts have held that "[t]he defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Blue View Corp. v. Bell, 298 Ga. App. 277, 278, 679 S.E.2d 739, 741 (2009). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." Id. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." Bridges, 176 Ga. App. at 230, 335 S.E.2d at 448.

Here, Plaintiff's complaint alleges, in conclusory fashion, that he has suffered "emotional distress, anxiety, worry, mental anguish and other emotional and or psychological injury(s) to his general peace, happiness and well-being" because of the Defendants' intentional and willful actions "and or inactions." (Compl. ¶ 73). Plaintiff, however, has not alleged any facts which suggest that the Defendants' actions (or

inactions) were extreme, outrageous, atrocious, intolerable, or beyond the bounds of decency, as required by law. Accordingly, to the extent that Plaintiff seeks in his complaint to bring an independent state law claim against the Defendants for intentional infliction of emotional distress, that claim is due to be dismissed.

**4. Civil RICO (Count Four)**

Plaintiff's Count Four Georgia civil RICO claim is wholly without merit. Plaintiff's one-paragraph count asserts the following conclusory allegation: that "[u]pon information and belief," Defendants violated Georgia's Racketeer Influenced and Corrupt Organizations Act "by virtue of the conduct as described herein." (Compl. ¶ 74).

Georgia's RICO statute makes it unlawful for anyone to acquire an interest in or control of money or property through a pattern of racketeering activity. Cobb County v. Jones Group P.L.C., 218 Ga. App. 149, 154, 460 S.E.2d 516, 521 (1995) (citing O.C.G.A. § 16-14-4(a)). To state a plausible RICO claim, Plaintiff must allege and show racketeering activity, which means that Plaintiff "must show that the defendant[s] committed predicate offenses (set forth in OCGA § 16-14-3(9)) at least twice." Williams v. Unum Life Ins. Co. of Am., No. 1:07-cv-0240-JOF, 2007 WL 2479561, at *2 (N.D. Ga. Aug. 27, 2007) (citation omitted); Perimeter Realty v. GAPI, Inc., 243 Ga.

App. 584, 590, 533 S.E.2d 136, 143 (2000) (stating that a "pattern of racketeering activity" is defined as two or more similar incidents of criminal conduct). A single transaction does not constitute a pattern of racketeering activity. Id. at 591, 533 S.E.2d at 144. Plaintiff must also allege and show a "direct causal connection between [the] injury and the commission of the predicate acts." Brown v. Moe's Southwest Grill, LLC, No. 1:07-cv-0741-RWS, 2009 WL 5175280, at *1 (N.D. Ga. Dec. 21, 2009) (citing O.C.G.A. §§ 16-14-4 and 16-14-3(2)) (other citation omitted).

Plaintiff has failed to state a plausible claim under Georgia's RICO statute. Plaintiff's complaint fails to allege any specific facts with regard to the Defendants that may be construed as predicate offenses that represent a pattern of racketeering activity under Georgia's RICO statute. See Williams, 2007 WL 2479561, at *2. Plaintiff's complaint also fails to satisfy the particularity requirement for fraud in Rule 9(b) of the Federal Rules of Civil Procedure that applies to fraud-based Georgia RICO claims brought in federal court, such as Plaintiff's. See Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG, 341 F. App'x 487, 493 (11th Cir. 2009). To satisfy the requirements of Rule 9(b), Plaintiff's complaint must set forth:

> (1) precisely what statements were made in what documents ..., (2) the time and place of each such statement and the person responsible for making [them], and (3) the content of such statements and the manner in



AO 72A
(Rev.8/82)

> which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997) (citations and quotation marks omitted). "Because fair notice is perhaps the most basic consideration underlying Rule 9(b), the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme." Id. at 1381 (quotation marks, brackets, and citations omitted). Where, like here, the case involves more than one defendant, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." Id. (citations and quotation marks omitted).

Plaintiff's Count Four allegation is too vague and general to meet the requirements of Rule 9(b); nor does the allegation state a plausible claim under Georgia's RICO statute. For the reasons stated, I recommend that Plaintiff's RICO claim be dismissed for failure to state a claim.

**5. Fraud and Misrepresentation (Count Five)**

Plaintiff's Count Five claim for fraud and misrepresentation is similarly deficient. Plaintiff alleges, in conclusory fashion, that "[b]ased on the facts and details as cited herein, Defendants have engaged in fraudulent conduct." (Compl. ¶ 75, citing O.C.G.A. §§ 23-2-51(b), 23-2-52, 23-2-56, and 23-2-57).



AO 72A
(Rev.8/82)

To state a claim premised on fraud, a plaintiff must "state with particularity the circumstances constituting [the] fraud." United States ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1302 (11th Cir. 2010) (quoting Fed. R. Civ. P. 9(b)). To comply with Rule 9(b), a complaint must set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted).

The elements of a fraud claim under Georgia law are similar. To state a claim for fraud under Georgia law, a plaintiff must plead five essential elements:

> (1) That the defendant made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the plaintiff; (4) that the plaintiff relied on the representations; [and] (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made.

Estate of Shannon v. Ahmed, 304 Ga. App. 380, 383, 696 S.E.2d 408, 410 (2010) (citation omitted). These allegations must be pled with particularity. Id. (citing O.C.G.A. § 9-11-9(b)).



AO 72A
(Rev.8/82)

Plaintiff's complaint does not meet the heightened pleading standard under either federal or state law because it fails to allege or identify with particularity the time, place, and content of the alleged fraudulent misrepresentations, the person that made the statements, that the statements were made with the intention and purpose of deceiving Plaintiff; in what manner Plaintiff relied on the statements, and how Plaintiff sustained the alleged loss and damage as the proximate result of the statements having been made.

Even assuming that Defendants intentionally made a false, material misrepresentation, the fact that Plaintiff has not alleged or demonstrated that he acted in reliance upon the misrepresentation is fatal to his claim. Plaintiff's repeated challenges to the parking ticket's validity undercut any claim of detrimental reliance. "Knowledge of the falsity of [a] representation is inconsistent with reliance thereon." DirecTV, Inc. v. Cavanaugh, 321 F. Supp. 2d 825, 836 (E.D. Mich. 2003).

Plaintiff has failed to state a plausible claim for fraud and misrepresentation. I therefore recommend that Defendants' motion to dismiss Plaintiff's Count Five claim be granted.

**6. General/Alternative Liability (Count Six)**

In Count Six of Plaintiff's state law claims, Plaintiff alleges that he is entitled to an unspecified legal remedy and right of recovery against Defendants pursuant to O.C.G.A. §§ 9-2-3 ["For every right there shall be a remedy"] "and or 44-12-21 ["For every violation of an express or implied contract and for every injury done by another to one's person or property, the law gives a right to recover and a remedy to enforce it."]. (Compl. ¶ 76). Because Plaintiff's Count Six claim does not state an independently cognizable claim upon which relief may be granted, I recommend that it be dismissed. See Stroman, 852 F. Supp. 2d at 1382 (dismissing identical claim for identical reason).

**7. Injunctive Relief (Count Seven)**

In Count Seven of Plaintiff's state law claims, Plaintiff requests (on his own behalf and on behalf of those similarly situated) that the Court issue an injunction preventing Defendants from engaging in the "unlawful and unfair practices" cited in Plaintiff's complaint. (Compl. ¶ 77).

It is settled law in this Circuit that a preliminary injunction is an "extraordinary and drastic remedy." Zardui-Quintana v. Richard, 768 F.2d 1213, 1216 (11th Cir. 1985). There are four prerequisites for the extraordinary relief of a preliminary

injunction. To prevail, a plaintiff must show: (1) a substantial likelihood of success on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. Id.; see also Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam).

Plaintiff has not met his burden for obtaining injunctive relief. Furthermore, under Federal Rule of Civil Procedure 65, the court may not issue a preliminary injunction unless "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Plaintiff has not tendered or offered to tender any amount as security for an injunction.

For all the reasons stated, I recommend that Defendants' motion to dismiss be granted with regard to Plaintiff's Count Seven claim for injunctive relief.

## IV. CONCLUSION

For the reasons stated in this Non-Final Report and Recommendation, I **RECOMMEND** that Defendants' Rule 12(b)(6) motion to dismiss (Doc. 9) be **GRANTED IN PART and DENIED IN PART.** I **RECOMMEND** that the motion



AO 72A
(Rev.8/82)

to dismiss be **GRANTED** as to Plaintiff's claim(s) under the FDCPA, his claim pursuant to § 1681s-2(a) of the FCRA, and his claims under state law, and **DENIED** with respect to Plaintiff's claim(s) pursuant to § 1681s-2(b) of the FCRA.

Should the district court approve and adopt this Non-Final Report and Recommendation, the parties are directed to schedule a conference with me before discovery commences to discuss Plaintiff's surviving claim(s) and the scope of discovery.

**IT IS SO RECOMMENDED**, this 18th day of December, 2013.

Gerrilyn G. Brill
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE